IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNION PACIFIC RAILROAD COMPANY, a Delaware corporation; and MINER ENTERPRISES, INC., a Delaware corporation, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | 8:06CV739 |
| v. | ) ) | |
| HERZOG CONTRACTING CORP., a Missouri corporation, | ) ) ) | ORDER ON CLAIM CONSTRUCTION |
| Defendant. | ) ) | |

      This matter is before the Court following a hearing for the purpose of construing the claims of United States Patent Nos. 5,311,822 (filed Dec. 7, 1992) and 5,423,268 (filed Dec. 7, 1992). After carefully considering the briefs and exhibits submitted by the parties and the argument of counsel, the Court issues the following Order on Claim Construction.

### Discussion

      The Court's task is to give patent "claims their broadest reasonable application 'in light of the specification as it would be interpreted by one of ordinary skill in the art,'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc), while heeding the "well-established principle that a court may not impart limitations from the written description into the claims." *Laitram Corp. v. NEC Corp.*, 163 F.2d 1342, 1347 (Fed. Cir. 1998). In construing a claim, if the "claim language is clear on its face, then [the court's] consideration of the rest of the intrinsic evidence is restricted to determining if a

deviation from the clear language of the claims is specified." *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001). However, if the claim language is not clear on its face, the specification is "always highly relevant . . . . Usually it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

**Pivoting Discharge Control Member**

Herzog contends that the meaning of this term is clear on its face and should be defined simply as something that pivots and controls the discharge of material. The Court finds that this term is not clear on its face. When read in light of the specification, however, the meaning becomes clear. The specification contemplates a "pivoting discharge control member" being a "conventional" one "as taught by the [Fearon] patent." '822 Patent, at col.1, l.67-68. The background and summary sections of the specification incorporate U.S. Patent No. 3,654,872 (filed May 11, 1970) ("Fearon") into the '822 Patent. *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1329 (Fed. Cir. 2001) ("When a document is 'incorporated by reference' into a host document, such as a patent, the referenced document becomes effectively part of the host document as if it were explicitly contained therein."). The Fearon patent contains the following definition of a pivoting discharge control member:

> The discharge control member 30
> comprises an arcuate top member 34
> whose surface has a radius equal to
> the distance from pivot point 32 to

> substantially the lower end of
> discharge opening 26.  The arcuate
> member extends the full
> longitudinal width of discharge
> opening 26 and, in normal position,
> covers the discharge opening
> entirely, preventing discharge of
> any ballast material.

Fearon, at col.2, l.19-26.  In addition, the '822 Patent specification itself contains the following similar definition:

> A pivoting discharge control member
> 21 comprises an arcuate top surface
> 22 with a radius approximately
> equal to the distance from a pivot
> point 23 on the end support plates
> 14 and 15, to the lower end of the
> discharge opening 11.  The arcuate
> top surface 22 covers the entire
> discharge opening 11 when the
> discharge control member 21 is
> pivoted to a center position to
> prevent discharge of any of the
> ballast material 4.

'822 Patent, at col.3, l.63 to col.4, l.1.  When viewed in light of the specification, then it becomes clear that the phrase pivoting discharge control member actually refers to a structure which, in its normal position, covers the hopper car discharge opening to prevent discharge of material and which pivots to release material from the hopper car.

### Drive Shaft Extending Lengthwise

Here, the parties dispute whether the word "lengthwise" refers to the length of the discharge control member through which the drive shaft extends or simply to the orientation or direction of the drive shaft itself.  For the following reasons, the Court will hold that the term refers to the length of the discharge control member.  First, the Court finds that the phrase

-3-

does not have a plain meaning and therefore it is necessary to consult the specification.  The specification does not define either the phrase in issue or the term "lengthwise," although the Court notes that Figures 4 and 5 depict the drive shaft extending through the pivoting discharge control member along an axis which corresponds with the length, or greatest dimension of the discharge control member.  U.S. Patent No. 5,423,268 figs. 4-5 (filed Dec. 7, 1992).  Having exhausted the intrinsic evidence, the Court next looks to a dictionary definition.  One popular dictionary defines "lengthwise" as being "[o]f, along, or in reference to the direction of the length; longitudinally."  *The American Heritage Dictionary of the English Language* (4th ed. 2004).  Finally, although the Court credits inventor testimony evidence with little weight, the inventor admitted in his deposition that in this context, "lengthwise" refers to the drive shaft extending "[f]rom one end of the door to the other." (Bounds dep. 52:2-11, Aug. 15, 2007.)  The Court concludes that the phrase "drive shaft extending lengthwise" means that the drive shaft extends from one end of the pivoting discharge control member to the other.

**Transmission**

The parties agree and the Court finds that the word "means" as used in claim 7 is used to connote structure rather than function and therefore does not invoke the requirements of 35 U.S.C. § 112, ¶ 6.

The dispute about this term centers on whether a transmission is an assembly of gears or more broadly something that transmits power from one element to another.  The Court finds that neither definition is the plain meaning of the term.  Some evidence regarding the meaning of this term appears in the intrinsic evidence, but it is not clear enough to be dispositive on the question of whether gears are required.  For example, claim 14 refers to a "transmission geared to a reversible electric motor," and the specification refers to "[a] transmission gear assembly" which is connected to an electric motor.  '822 Patent, at col.18, l.47-48, col.4, l.12-16.  However, other claims mention a transmission but make no mention of gears.  *See, e.g.*, *Id.* at col.7, l.13-14.

Finding no answer in the intrinsic evidence, the Court has consulted several dictionaries as an aid to determining the plain meaning of the word.  A typical definition of "transmission" is: "4.a. transference of force between machines or mechanisms, often with changes of torque and speed.  b. a compact, enclosed unit of gears or the like for this purpose, as in an automobile."  *Random House Webster's Unabridged Dictionary* 2011 (2d ed. 1997).  The first definition above refers to a process, while the second definition refers to a device designed to carry out the process.  Throughout the patent, each time the term "transmission" is used, it is clearly used in a sense which refers to a device, as opposed to the more abstract sense that

refers to a process.  *See, e.g.*, '822 Patent, at col.4 l.16-17 ("The transmission 35 is bolted onto a horizontal support plate . . . .").  The plain meaning of the term, therefore, is best represented by the second definition.

### V Shaped Material Distributing Blades

Miner and UP assert that the term "V shaped material distributing blades" should be construed to mean a structure having two portions oriented at an angle to each other and which merge into a point at a leading edge of the blade.  Herzog contends that the phrase is clear on its face and should be given its ordinary and accustomed meaning.  The Court concludes that Herzog is correct.

The only clarification which can be gained from the intrinsic evidence is that the "V blades" are "shaped as a V." *See, e.g.*, U.S. Patent 5,423,268 col.11, l.31-32 (filed Nov. 10, 1993).  Dictionary definitions are similarly broad.  *See Random House Webster's Unabridged Dictionary* 2133 (2d ed. 1997) (defining V-shaped as "having the shape of the letter V: *a V-shaped flying formation.*").  Also, the Court searched in vain for a definition of V-shaped which insisted on the shape coming to a point.  There being insufficient evidence in the patent to vary the meaning of V-shaped from its broad general meaning, the Court concludes that the phrase maintains its ordinary and accustomed meaning, which is a shape which resembles the letter V.

**Blade Operating Means**

This term contains a means-plus-function limitation subject to the requirements of 35 U.S.C. § 112.[1] The Court's role is to first construe the function recited in the claim and to then identify the structure or structures disclosed in the specification that perform the function. *Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352, 1361 (Fed. Cir. 2000). The function here is to "selectively move the blades between the operative and non-operative positions." '268 Patent, at col.13, l.21-22. It is clear from a review of the other claims in this patent that a "blade operating means" can exist without a receiver or a mobile remote transmitter. Therefore, the structure corresponding to the above function is (1) a cylinder actuator, (2) plural pivot arms acting in cooperation with the actuator, and (3) a switch for making the selection.

**Door Operating Means**

This term appears in the '268 Patent in claims 1, 10, 27, and 28. However, Herzog has only asserted infringement of claim 20 of this patent. Since a counterclaim based on the other claims in the '268 Patent is compulsory under Fed. R. Civ. P. 13(a), the Court does not consider this term to be in controversy. *See Polymer Industr. Prods. Co. v. Bridgestone /*

---

[1] Paragraph 6 if the statute states that "[a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." *Id.*

*Firestone, Inc.*, 347 F.3d 935, 938 (Fed. Cir. 2003).  Therefore, the Court declines to construe this term since "only those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy."  *Vivid Technologies, Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999); *see also Sulzer Textile A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366 (Fed. Cir. 2004) ("The *Markman* decisions, in ruling that claim construction is a matter of law for the court, do not hold that the trial judge in a patent case must repeat or restate every claim term in the court's jury instructions. . . .").

### Conclusion

The Court concludes that the claims in U.S. Patent Nos. 5,311,822 and 5,423,268 should be construed in accordance with the foregoing discussion.  Accordingly,

IT IS ORDERED:

1)  The terms "pivoting discharge control members," "discharge control member," "pivoting control member," "pivoting hopper discharge control members," and "discharge control member," appearing in U.S. Patent No. 5,311,822 have the following meaning:  A structure which, in its normal position, covers the hopper car discharge opening to prevent discharge of material and which pivots to release material from the hopper car.

2)  The term "drive shaft extending lengthwise," appearing in U.S. Patent No. 5,311,822 has the following meaning:

The drive shaft extends from one end of the discharge control member to the other.

       3)  The terms "transmission," and "transmission means," appearing in U.S. Patent No. 5,311,822 have the following meaning:  A compact, enclosed unit of gears or the like for the purpose of transference of force between machines or mechanisms, often with changes of torque and speed.

       4)  The term "V shaped material distributing blades" appearing in U.S. Patent No. 5,423,268 has the following meaning: Material distributing blades, the shape of which resembles the letter "V."

       5)  The term "blade operating means" appearing in U.S. Patent No. 5,423,268 has the following meaning:  Function: to selectively move the blades between the operative and non-operative positions; Corresponding structure: (1) a cylinder actuator, (2) plural pivot arms acting in cooperation with the actuator, and (3) a switch for making the selection.

       DATED this 4th day of October, 2007.

                          BY THE COURT:

                          /s/ Lyle E. Strom
                          _____
                          LYLE E. STROM, Senior Judge
                          United States District Court